Ronald H. Freshman
SBN #225136
3040 Skycrest Dr.
Fallbrook, CA 92928
Tel (858) 756-8288
Fax (858) 964-1728
ronfreshman@gmail.com
Attorney for Debtor Kimberly Cox

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-61716-CN 7 |
| KIMBERLY COX, | Chapter 7 |
| Debtor. | **DEBTOR'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HER MOTION FOR RELIEF TO SET ASIDE ORDER; REOPEN THE BANKRUPCY CASE AND AMEND THE SCHEDULES UNDER RULE 60** |

### REQUEST FOR JUDICIAL NOTICE OF DOCUMENTS, ADJUDICATIVE FACTS[1] AND AUTHORITIES ("RJN")

---

[1] " Adjudicative fact, (1959) A controlling or operative fact, rather than a background fact; a fact that is particularly related to the parties to a proceeding and that helps the tribunal determine how the law applies to those parties. · For example, adjudicative facts include those that the jury weighs.  See Fed R. Evid. 201. Cf. *legislative fact*." (Black's Law Dictionary 2014 Tenth Ed.) ("There is no rule that deals with 'legislative' facts;" "Adjudicative facts are simply the facts of the particular case." "Stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication.  They are the facts that normally go to the jury in a jury case [note, a jury trial was demanded in the District Court instant case which was never tried].  They relate to the parties, their activities, their properties, their businesses." (2 Administrative Law Treatise 353) (Notes of Advisory Committee on Rules, re Rule 201 in drawing from Professor Kenneth Davis in his article "An Approach to Problems of Evidence in the Administrative Process, 55 Harv.L.Rev. 364, 404-407 (1942)" and the same author's Judicial Notice, 55 Colum.L.Rev. 945 (1955); Administrative Law Treatise, ch. 15 (1958); A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69 (1964).

1

Pursuant to the Fed. R. Evid. and other authorities provided herein,[2] Appellant Kimberly Cox ("Ms. Cox") hereby respectfully petitions this Court to take judicial notice of the (1) adjudicative facts, most of which are undisputed;[3] (2) referenced documents; and (3) authorities cited herein.[4] Ms. Cox further requests judicial notice of documents and adjudicative facts as applicable, pursuant to the "incorporation by reference" doctrine, where the contents alleged in the operative (second amended) complaint[5] and the authenticity of the documents whether attached to the complaint or not, no party has questioned or disputed.[6]

---

[2] Each RJN herein, is requested pursuant to, *inter alia*, Fed. R. Evid., R. 102, 201(c)(2) & (d), 401(a) & (B), and 402. Also see, *e.g. Oneida Indian Nation v. New York* (2d Cir. N.Y. Oct. 4, 1982), 691 F.2d 1070, 11 Fed. R. Evid. Serv. (CBC) 1002, overruled, *Cayuga Indian Nation v. Pataki* (2d Cir. N.Y. June 28, 2005) 413 F.3d 266 [judicial notice taken where there is no dispute as to the authenticity of materials considered even though limited to law, legislative facts or factual, incontrovertible matters]; *In re Fannie Mae* Sec. (D.D.C. May 31 2007 503 F.Supp.2d 9, aff'd (D.C. Cir. Aug. 8, 2008) 534 F.3d 779 [court may take judicial notice of fact not subject to reasonable dispute if fact is either (1) generally known within the territorial jurisdiction of trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned]; *Sakugawa v. Countrywide Bank F.S.B.* (D. Haw. Jan. 24, 2011) 769 F.Supp.2d 1211 [mortgages were matters of public record and subject to judicial notice]. Also see, *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d 668, 689 [setting forth standard of review and stating that court may take judicial notice of matters of public record.]

[3] "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside of reasonable controversy, this process is dispensed with as unnecessary. (See, Notes of Advisory Committee on Rules, *et seq*., *Id. supra.* [fn. 1 herein above]).

[4] "This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those 'so universally known that they cannot reasonably be the subject of dispute,' those 'so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute,' and those 'capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.' The traditional textbook treatment has included these general categories (matters of common knowledge, facts capable of verification), McCormick §§ 324, 325, and then has passed on into detailed treatment of such specific topics as facts relating to the personnel and records of the court, Id. § 327, and other governmental facts, Id. § 328." (See, Notes of Advisory Committee on Rules, *et seq*., *Id. supra.* [fn. 1 above]).

[5] See, 9th Cir. App. case # 16-16566, DktEntry: 18 (actually DktEntry: 18-1 through 18-7 "AER") pgs. 0429-0530 ("SAC").

[6] See, *e.g. Knievel v. ESPN* (2005) 393 F.3d 1069, 1076 [the Ninth Circuit has extended the doctrine to situations in which the plaintiff's claim depends on the contents of an undisputed document even though the plaintiff does not explicitly allege the contents in the complaint (internal citations omitted).]

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 2 of 31

In addition, the Court must[7] take judicial notice of records that were created after the motion to dismiss in the District Court was granted such as those included in the Motion this RJN is in support of. Wright & Miller observes that taking judicial notice of facts outside the appellate record "seems to be favored when the appellate court needs to take account of developments in the case subsequent to proceedings in the trial court."[8]

Accordingly, pursuant to Fed. R. Evid., R. 201(c)(2), the necessary information is provided as follows:

## I. RJN of the Adjudicative Facts Related to the subject Purported Deed of Trust as Evidence of the Security or Lien

A. The subject purported DEED OF TRUST was dated December 10, 2004 ("DOT").[9]

B. It is unchallenged and undisputed[10] that the DOT as the purported evidence of the security or "security instrument" and lien on the subject Property, and any related "power of sale" were timely rescinded. Ms. Cox's rescission remedy was invoked and effected by Ms. Cox pursuant to the Truth in Lending Act as implemented by Regulation Z (15 U.S.C. §§ 1601-1667f, as amended, and 12 C.F.R. Part 1026) (collectively the "TILA") in July 2007 when the statutorily defined "creditor" was noticed thereof, within the 3-year statute of repose;[11]

## II. RJN re the Substitution of Trustee and Assignment of Deed of Trust

A. A "SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST" ("Assignment")[12] was recorded on December 7, 2009 which purported to assign ("grant[], assign[], convey[], and transfer[]" the DOT from Mortgage Electronic Registration Systems, Inc. ("MERS") to a non-existent trustee for a non-existent trust. However, because the security was

---

[7] See, Fed. R. Evid., R. 201(c)(2).

[8] 21B Wright & Miller, Fed. Prac. & Proc. Evid. § 5110.1 at 301-302 (2d ed. 2005). Circumstances that arose after the appeal was filed that "may affect" the Court's consideration of the issues presented by the appeal are consistent with the principle that judicial notice of records created after a motion to dismiss or outside the appellate record is favored. (see, *Bryant v. Carleson* (9th Cir. 1971) 444 F.2d 353 at 357.)

[9] See, AER pgs. 0765-0780, a purported copy of the subject DEED OF TRUST proffered by Appellee MERS ("DOT").

[10] See *e.g.*, AER pg. 0008, fn. 8 (Defendants did not and could not challenge the validity of the Rescission). (See, citations, *supra*).

[11] See *e.g.*, AER pgs. 0003:14-19; 0524-0526 (the "Rescission"); AER 0271:7-9; and *Jesinoski v. Countrywide Home Loans, Inc.* (Jan. 12, 2015) 135 S.Ct. 790 ("*Jesinoski*").

[12] See *e.g.*, AER pg. 0219.

3

rescinded as a matter of law pursuant to the TILA Rescission 2 years before in 2007, no interest was in fact assigned whatsoever.

B. Contrary to the Dist., App. and this Court Ms. Cox's Rescission was a remedy, not a "claim" or "cause of action;"[13]

C. Neither the statutorily defined "creditor" nor anyone else (and no one else had standing to do so anyway) complied with the mandatory duties under 15 U.S.C. § 1635(b) and did not challenge or dispute the Rescission, within the 20-day statutory deadline or at any other time;[14]

D. Pursuant to TILA (15 U.S.C. § 1640 *et seq.*), any right Ms. Cox may have had to file a lawsuit to allege any related "cause of action" or state a claim upon which relief can be granted for damages, terminated pursuant to the 1-year statute of limitations in December 2008;[15]

E. Pursuant to TILA, the 3-year applicable statute of repose, terminated in December 2007;[16]

F. Until the *Jesinoski* decision by the Supreme Court of the United States in January 2015, this 9th Circuit required the filing of a lawsuit to assert a TILA rescission;[17] whereas,

---

[13] See, *e.g.* AER pgs. 007:20; 0431:15-0432:26; AOB pg. 10, fn. 17, pgs. 41, 49, 58 and 66; *e.g. Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 69-70; 141 Cong. Rec. S14,566,S14,567 (Sept. 28, 1995) (statement of Sen. D'Amato) [rescission is a "draconian ***remedy***"; 15 U.S.C. § 1640(g) [describing section 125 (15 U.S.C. 1636 rescission) as a "***remedy***;" *Weingartner v. Chase Home Fin*. (2010, DC Nev) 702 F.Supp.2d 1276 [describing a THE TILA rescission as a "***remedy***"]; *Valentine v. Influential Sav. & Loan Assoc*. (1983), ED Pa) 572 F.Supp. 36 ["Rescission is[an] equitable ***remedy***"]; *Andrews v. Chevy Chase* Bank (2008, CA7 Wis) 545 F3d 570 [7[th] Cir. Court of Appeals held rescission is an equitable, individualized, restorative ***remedy*** under 15 U.S.C. § 1635]; *Eby v. Reb Realty* (1974, CA9 Ariz.) 495 F2d 646 [rescission under 15 U.S.C. § 1635(a) is a remedy, 15 U.S.C. § 1640 is for recovery; each is an "election of remedies" for failure to make required disclosures]; the creditor's (AWL's) violation of 1635(b) is the cause of action, rescission is the ***remedy*** (and therefore not a "cause of action"). (Emphasis added in the above).

[14] See, *e.g.* AER pgs. 0026 ¶ 27, 0050 ¶ 4, 0258 ¶ 4, 0261-0262 ¶ 12, 0270 ¶ 32, 0271 ¶ 35(c), 0437 ¶ 20, 0440 ¶ 26, 0511-0512 ¶ 195; Ms. Cox's Opening Brief (DktEntry: 17 "AOB") pgs. 11-12 fn. 3; Ms. Cox ARB pg. 6 fn. 18, 29, 37 and 45 and pgs. 16-17, and *passim* throughout the papers in this action.

[15] See 15 U.S.C. § 1640 *et seq*. and herein *passim*.

[16] See, *e.g.* AER pgs.0050:8-9; 0270:17-20 and *Jesinoski, Id*. (Also see, Fed. R. Evid., R. 201 *et seq*.

[17] See, *e.g.* AER pgs. 0431:13-23; 0431:24-0432:6; and *Hao v. New Century Mortg. Corp*., 2012 U.S. Dist. LEXIS 97787 (N.D. Cal. July 13, 2012) citing *McOmie-Gray v. Bank of Am.*

4

G.  The *Jesinoski* Court held that:

   1.  Mailing a notice of an intent to rescind within three years of consummation is "all that a borrower must do in order to exercise his right to rescind under the Act;"

   2.  "Section 1635(a) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter;"

   3.  "Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower 'shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis in original); and

H.  *U.S. Bank National Assn. v. Naifeh* (2016) 1 Cal.App.5th 767, 784 (petition for review denied) held that where a creditor (such as in this case) acquiesces to the rescission or ignores it, a timely notice of rescission (such as Ms. Cox's) automatically renders the security interest void.[18]

**III.  RJN of Documents and Adjudicative Facts Related to Ms. Cox's Ch. 7 Bankruptcy**

A.  Appellees/Defendants, Non-Appellees/Non-Defendants arguments, the Dist. Court's Order and App. Court's Memorandum Decision(s),[19] relied virtually exclusively, on the presumption(s) and legal conclusion(s) that Ms. Cox "lack[ed] standing to bring this case;" her "claims ... now belong to the bankruptcy estate;" and she "lacks standing to pursue them;"[20]

B.  Ms. Cox filed her Chapter 7 bankruptcy petition on **November 12, 2010**; received her discharge and the case was closed on **January 27, 2012**;

C.  Notwithstanding the foregoing, pursuant to, 11 U.S.C. § 521(a)(1), Ms. Cox did file, *inter alia*, the following in her bankruptcy case:

   1.  SCHEDULE A – REAL PROPERTY filed as page 1 of 16 of Doc# 21 on 02/10/11 which listed the nature of Ms. Cox's interest in the Real Property the subject of

---

*Home Loans* (9th Cir. 2012) 667 F.3d 1325, 1329. (Also see, Fed. R. Evid., R. 201 *et seq*. and citations, *Id*., *supra*).

[18]  Also see, *Merritt v. Countrywide fin. Corp*. (2014) 759 F.3d 1023, 1032 citing *Yamomoto v. Bank of N.Y.* (2003) 329 F.3d 1167, 1172 [stating that a transaction is rescinded automatically when a notice of rescission is acquiesced to, and uncontested by the creditor as undeniably occurred in this instant case].

[19]  See, 9th Cir. Court of Appeals case # 16-16566 DktEntry: 98 (98-1 and 98-2) ("Memorandum").

[20]  See, AER pgs. 0006-0010 § II.B. and associated footnotes therein.

5

this action[21] as Fee Simple with a current value unknown and amount of secured claim of $6,541.00;

    2.    SCHEDULE C – PROPERTY CLAIMED AS EXEMPT filed as Page 5 of 16 of Doc# 21 on 02/10/11, which listed the Property's exemption under CCCP § 704.730(a)(3) the value of Claimed Exemption of $175,000.00;

    3.    SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS filed as Page 6 of 16 of Doc# 21 on 02/10/11, which listed the only secured claim against the Property, the County of Santa Cruz Treasurer – Tax Collector for Property taxes and being contingent on selling the property to pay the taxes from the proceeds of sale; listed the claim as CONTINGENT and an amount secured of $6,541.00;

    4.    SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS filed as Page 8 of 16 of Doc# 21 on 02/10/11, which stated the following:

    (a)    For the statutorily defined "creditor" named America's Wholesale Lender P.O. Box 10219 Van Nuys, CA 91410-0219; a purported bankruptcy claim was scheduled that was allegedly incurred on 12/10/2004 for the Property; that if such debt was proven to exist at all, it was unsecured, subject to discharge and subject to setoff. The Property was also listed as contingent, unliquidated and disputed with an unknown amount of the purported claim;

    (b)    Schedule F also listed the following under the creditors' column, as purported assignees or other notification for America's Wholesale Lender:

        1.    Countrywide Home Loans, Inc. P.O. Box 10423, Van Nuys, CA;

        2.    The Bank of New York, 101 Barclay St. 4W, New York, NY 10286;

        3.    The Bank of New York Mellon As Trustee C/O BAC Home Loans Servicing 400 Countrywide Way SV-35, Simi Valley, CA;

    5.    The STATEMENT OF FINANCIAL AFFAIRS was filed as Doc# 22 on 02/10/2011 ("SFA"):

    (a)    On page 2 ¶ 10, the SFA, it was stated that there was no property transferred ("None" was checked) either absolutely or as security within two years immediately preceding the commencement of the case;

---

[21] The subject real property is commonly known as and located at 131 Sutphen St., Santa Cruz, CA 95060, APN 008-091-17 ("Property").

(b)     The SFA was declared by Ms. Cox to be true and correct under penalty of perjury;

(c)     There was no objection or challenge by any creditor or the Bankruptcy Trustee to ¶ 10 of the SFA which stated that that no property was transferred;

(d)     There was no objection or challenge by any creditor or the Bankruptcy Trustee to ¶ 14 of the SFA which stated that there was no property owned by another person that the debtor (Ms. Cox) held or controlled; and

(e)     There was no objection or challenge by any creditor or the Bankruptcy Trustee to any of Ms. Cox's statements she made in the SFA;

D.      Appellees, Non-Appellees the Dist. Court in its Order and the App. Court in its Memorandum Decision, each alleged that the "claims" (which is reasonable to presume, the term "claim" as used, meant claims upon which relief can be granted, since no definition of the term was provided) in Ms. Cox's Second Amended Complaint[22] were required to be "scheduled" as pre-petition "property" of the bankruptcy estate even though there were no pre-petition claims upon which relief can be granted, stated in the SAC;[23]

E.      Ms. Cox signed the DECLARATION CONCERNING DEBTOR'S SCHEDULES DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR on February 2, 2011, stating that she had read the summary and schedules which consisted of 19 sheets;

F.      Any claim upon which relief can be granted, "claim" or "cause of action" that could have been "listed" or "scheduled" in Ms. Cox's bankruptcy, ceased to exist in December 2007[24] pursuant to the applicable statute of repose, long before her 2010 bankruptcy petition was filed, her case was closed, and all scheduled unsecured debts, including any purported debt related to the refinancing transaction the subject of this action, were judicially discharged by Court Order in 2012;

G.      It is undisputed that Ms. Cox's Property was "scheduled" under 11 U.S.C. 521(a)(1);

---

[22]    See, the SAC.

[23]    See *e.g*., the SAC and *passim* throughout this Action.

[24]    The one-year statute of limitations to state a claim upon which relief can be granted for damages under 15 U.S.C. § 1640 *et seq*., terminated in December 2005.  Ms. Cox's right to state a claim upon which relief can be granted, to force AWL to comply with its 15 U.S.C. § 1635(b) duties, also terminated pursuant to the statute of repose in December 2007.

7

H.   Ms. Cox's Property was not "administered" during her bankruptcy or at the time of closing the case; and

I.   The Bankruptcy Court did not order otherwise; and Ms. Cox's Property was abandoned to her upon closing the case.[25]

**IV.   RJN of Documents and Adjudicative Facts Related to Ms. Cox's "Standing"**

A.   The following RJNs are notwithstanding:

(1)   Defendants'/Appellees and non-Defendants/non-Appellees' own lack of standing;[26]

(2)   Defendants/Appellees' untruthful legal conclusion(s) that Ms. Cox "lack[ed] [] standing" to raise the claims upon which relief can be granted, she stated in the SAC;[27] and

(3)   that the acts related to the claims upon which relief can be granted that *were* stated in the SAC, in fact did not occur, until commencing in **November 2014** as stated throughout this litigation with supporting evidence provided and in the record.

B.   Ms. Cox's claims upon which relief can be granted did not accrue until (1) the acts actually occurred; and (2) the SCOTUS *Jesinoski* decision in **January 2015**, each of which was long after Ms. Cox's bankruptcy petition was filed, and the case was closed;[28]

C.   The claims upon which relief can be granted stated as Counts 1-6 in the SAC, were as follows:

---

[25] " 'Abandonment under section 554(c), commonly referred to as 'technical abandonment,' occurs automatically." *Sandres v. Corr. Corp. of Am*., 2010 U.S. Dist. LEXIS 113f959, at *6 (E.D. Cal.)(citing *In re DeVore* (B.A.P. 9th Cir. 1998) 223 B.R. 193, 197; see also 11 U.S.C. § 554(c) ("Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor . . .").

[26] See *e.g*., AOB pgs. 12-13, 36; ARB pgs. 13, 21-22 and fn. 37; and *passim* throughout the AER and this litigation.

[27] Appellees/Non-Appellees' and the District Court's "standing" arguments are exclusively predicated on the erroneous assumption that the claims upon which relief can be granted, stated in the SAC, were pre-petition "claims" which they were not. Ms. Cox's "claims" were not "related" to pre-petition acts either.  The claims upon which relief can be grated stated in the SAC were entirely based on Appellees' post-petition acts which commenced in 2014, long after Ms. Cox's 2010 bankruptcy case closed.

[28] See, AER pgs. 0430:18-28, 0431:11-23, 0432:7-18, 0434:23-26, 0437 ¶ 21, 0440:25-27, 0441:14-20, and *passim* therein; AOB pgs. 16 ¶ 8, 18 ¶ 13, 20 ¶ 19, 26-27, 30-32, 36, 37, 40-42, 57, 58, 60, and fn. 6, 13 and 20 therein; ARB pgs. 9-10, 15-16 § III.D., 31 and 34 § VI.A.5, and fns. 26, 38 and 79 therein.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 8 of 31

1.    Count 1[29] sought relief from the Court to Cancel the wrongfully recorded false instruments and outstanding note referenced in the SAC.  The applicable authority was Cal. Civ. Code § 3412 as the only California statutory authority available to clear the clouded title to Ms. Cox's Property which has been rendered unmarketable and unvendible by Appellees and Non-Appellees' acts commencing in 2014.  While both Count 1 and § 3412 are generally entitled "cancellation of instruments," the relief Ms. Cox sought was actually stated, for the Court to "cancel" these instruments from the County records, not to cancel the instruments themselves because there was no need to.  This is because the instruments had already been rescinded and rendered void ("cancelled") as a matter of law in July 2007 pursuant to Ms. Cox's TILA Rescission remedy that was not able to be raised due to the prevailing holding in this 9th Circuit and therefore did not accrue, until the unanimous 2015 SCOTUS holding in *Jesinoski* reversed it;[30]

(b)    Count 2 sought relief in the form of damages for the pecuniary loss Ms. Cox incurred for the slander and disparagement of the title to her property by ORNTIC, NewPenn, BONYMCorp and MERS which rendered her Property unvendible and unmarketable and caused the diminution of its value;

(c)    Count 3 sought actual, compensatory and punitive damages against ORNTIC and NewPenn for their misrepresentations, false recitals and fraud in wrongfully recording or causing to be wrongfully recorded, false instruments in the County records claiming authority they did not have;

(d)    Count 4 sought injunctive relief, statutory damages, attorneys' fees and costs, for ORNTIC and NewPenns' unconscionable false, deceptive and misleading representations and violations of the Federal Debt Collection Practices Act and California's Rosenthal Debt Collection Practices Act, for acting as debt collectors attempting to collect a debt that (1) does not exist; (2) that neither owns; and (3) without authority;

(e)    Count 5 sought damages for the direct injury and economic damages proximately caused by ORNTIC, NewPenn and MERS for violating the Unfair Practices

---

[29]   See, the SAC (AER pgs. 0455-0466.)

[30]   Until the January 2015 holding by the SCOTUS in *Jesinoski*, this 9th Circuit required a lawsuit be filed to assert a TILA rescission. See, *e.g*. ARB pgs. 15-16 and related footnotes therein and AER pgs. 0431:11-0432:26 (internal citations omitted).

9

Act and thereby depriving Ms. Cox of income and the right to a marketable title to her property; and

    (f)    Count 6 sought injunctive relief and compensation in the form of attorneys' fees for all defendants' violation of Ms. Cox's rights protected under the U.S. and California Constitutions;

(2)    There was no Count, and contrary to Appellees, Non-Appellees and the District Court in its Order; nor was there a "claim" upon which relief can be granted (or "cause of action"), stated in the SAC, to enforce Ms. Cox's Rescission (nor was there any need to);[31] and

(3)    Counts 1-6 and the claims upon which relief can be granted stated in the SAC were not pre-petition "causes of action;" because they did not occur until commencing in 2014; and had nothing to do with the Rescission itself which was "effected" as a matter of law in 2007, long before Ms. Cox's 2010 bankruptcy was filed.

## V.    RJN of Adjudicative Facts Related to the District Court's Order[32]

    A.    The District Court stated in its Order that Ms. Cox "...brings this action to rid herself of a purported mortgage refinancing loan;"[33] whereas,

    B.    Ms. Cox had already rescinded the purported mortgage refinancing transaction as a matter of law in July 2007;[34]

    C.    The District Court stated in its Order that the "defendants" to the action included, *inter alia*, "The Bank of New York" and "The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-02 ("BONY");" whereas,

    D.    There was no defendant named as, nor was BONY sued by Ms. Cox;[35]

---

[31]  There was no need to "enforce" the Rescission because it was already effected as a matter of law in 2007 pursuant to TILA and *Jesinoski*. The Rescission was then acquiesced to and automatically completed (*Id.* citations) when AWL, as the only statutorily defined "creditor" (see, 15 U.S.C. § 1602(g)), failed to comply with the mandatory ("the creditor shall") TILA and 15 U.S.C. § 1635(b), within the statutory 20-day deadline. (*Id.* citations).

[32]  See, AER pgs. 0002-0011 (in this section, the "Order").

[33]  See, AER pg. 0002:13.

[34]  See, AER pgs. 0430:11-17, 0435 ¶ 16, 0446 ¶ 39, 0453 ¶ 57(b), 0455 ¶ 59 and 0524-0526; AOB pgs. 10-11, 13, and ARB pgs. 5, 9, 11-12, 13-14 and 31 along with the referenced footnotes and citations.

[35]  See, generally the SAC, AOB, ARB, OSC-2 and all other papers filed by Ms. Cox in this action.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 10 of 31

E.     The District Court stated in its Order that Ms. Cox "recorded the deed on September 1, 1998;"[36] whereas

F.     The purported DOT was recorded by the County of Santa Cruz Recorder Gary E. Hazelton and his Assistant Carol D. Sutherland after being requested to be recorded by First American Title Company;[37]

G.     The District Court stated in its Order that Ms. Cox "secured a $544,000 refinancing loan with a deed of trust ("DOT") on the Property;"[38] whereas,

H.     The District Court stated in its Order that the DOT "named non-party America's Wholesale Lender as the lender;"[39] whereas,

I.     The DOT under its ¶ (C) actually stated that the "Lender is" "AMERICA'S WHOLESALE LENDER, Lender is a CORPORATION organized and existing under the laws of NEW YORK" and that "Lender's address is P.O. Box 10219, Van Nuys, CA 91410-0219;"[40]

J.     The District Court stated in its Order that Ms. Cox stated a "Truth in Lending Act ("TILA") claim;"[41] whereas

K.     Ms. Cox did not state a claim upon which relief can be granted against AWL whatsoever; nor did Ms. Cox state a "claim" upon which relief can be granted against anyone for "TILA;"[42]

---

[36]   See, AER pg. 0003:5.

[37]   See, the purported DOT, *Id*.

[38]   See, AER pg. 0003:8-9.

[39]   See, AER pg. 0003:9-10.

[40]   See, the DOT, *Id.*

[41]   See, AER pg. 0003:14-15.

[42]   The term "claim" as used in bankruptcy is unique and was not differentiated from the term as used by the District Court in its Order.  Also see, 11 U.S.C. § 101(5) "The term 'claim' means – (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

As defined by the U.S. Code, Appellees/Defendants, Non-Appellees/Non-defendants and the District Court misused the term "claim" throughout this litigation as it relates to Ms. Cox's TILA Rescission (and bankruptcy).  The Rescission was not merely a "right to an equitable remedy for breach of performance" or a "right to payment" but was an "equitable remedy**" *that had already been exercised and effected in 2007* pursuant to the Rescission.  Ms. Cox

1    L.    The District Court stated in its Order that Ms. Cox alleged that "AWL was the
2    creditor;"[43] whereas,

3    M.    Ms. Cox did not "allege[] that AWL was the creditor but actually stated that for the
4    purpose of TILA (_**only**_), AWL was the statutorily defined "creditor" as qualified pursuant to 15
5    U.S.C. § 1602(g), and was the only one who maintained the right to challenge the Rescission; but
6    also had the mandatory duty to comply with 15 U.S.C. § 1635(b) within the 20-day statutory
7    deadline which it failed to do; notwithstanding AWL's lack of existence as named in the
8    purported DOT.[44]   An entity that does not exist cannot be an actual "creditor" and Ms. Cox
9    alleged no such thing;

10    N.    The District Court stated in its Order that Ms. Cox alleged that the SOT and
11    Assignment was invalid and void because the Defendants and AWL were not what they purported
12    to be;"[45] whereas,

13    O.    Ms. Cox actually stated that (1) the wrongfully recorded false SOT and Assignment
14    was invalid and void because the subject purported DOT relied on for its validity was rescinded
15    as a matter of law two years before; (2) that MERS could not be the nominee for AWL because
16    AWL did not exist as named in the DOT; (3) because BONY to whom the SOT and Assignment
17    by MERS purported to assign the DOT to, did not exist; and (4) MERS attempted to effect the
18    SOT and Assignment in its own right, a right it did not possess;[46]

19    P.    The District Court stated in its Order that Ms. Cox alleged that the SOT and
20    Assignment was invalid and void because Ms. Cox "had previously rescinded the DOT;"[47]
21    whereas,

---

has explained throughout this case and provided supporting authority showing that her TILA
Rescission was a remedy, not a "claim." This is an adjudicative fact that must be taken
judicial notice of for the reasons and upon the grounds and authorities cited herein; in the
SAC and papers filed in the District Court and briefs, RJNs and Motions filed in the Appeal.

[43]   See, AER pg. 0003:15.

[44]   See _e.g._, AER pgs. 0434:6-12, 0437 ¶ 20, 0440-0441 ¶¶ 26 and 27, 0455 ¶ 61, 0456-0457 ¶
67, 0490 ¶ 144(d); the AOB, _passim_; and ARB pgs. 12 and 16 fns. 29 and 37.

[45]   See, AER pg. 0003:22-23.

[46]   See _e.g.,_ AER pgs. 0443-0444 ¶¶ 31-32 0457 ¶¶ 69-71, 458 ¶ 75, 0459-0461 ¶¶ 81 and 85,
0466-0467 ¶ 95(b)(2), 0470 ¶ 102 _et seq._, 0475 ¶ 113, 0478 ¶ 119, 0482 ¶ 124, 0485 ¶ 132,
0487 ¶ 135, 0499-0450 ¶ 161 and 0514:12-13.

[47]   See, AER pg. 0003:24.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 12 of
31

Q. Ms. Cox did not (only) "rescind[] the DOT" but rescinded the entire refinancing transaction the subject of this action, for which the DOT was purported to be evidence of the security. The DOT and the security itself were both rescinded, rendered invalid and void as a matter of law pursuant to TILA and *Jesinoski*; because AWL failed to provide the required disclosures pursuant to TILA, and AWL failed to comply with its duties under 15 U.S.C. § 1635(b) or to otherwise challenge the Rescission within the statutory 20-day deadline or any other time;

R. The Dis. Court stated in its Order that "Plaintiff scheduled the Property and the loan at issue as unsecured, nonpriority, contingent, unliquidated, and disputed;"[48] whereas,

S. There was no "loan at issue" as evidenced by the yet-to-be-produced note or described in the DOT purportedly as evidence of the security for the purported debt, and what was "scheduled" in Ms. Cox's bankruptcy was a "CLAIM"[49] not a "loan;"

T. The District Court stated in its Order that Ms. Cox "filed an adversary proceeding in bankruptcy court...to determine whether or not the purported refinancing debt was secured;"[50] whereas,

U. The complaint filed as an adversary proceeding in Ms. Cox's bankruptcy was actually filed "TO DETERMINE THE VALIDITY, EXTENT, INTEREST, AND SECURED STATUS OF ALLEGED LIEN AND ASSOCIATED DEBT; TO DISALLOW CLAIMS AS SECURED AND CANCEL SECURITY INSTRUMENT; FOR DECLARATORY RELIEF; FOR INJUNCTIVE RELIEF TO STOP FORECLOSURE; AND, TO QUIET TITLE;"[51]

V. The District Court stated in its Order that "[t]he bankruptcy court dismissed the adversary proceeding for lack of subject matter jurisdiction because only the Chapter 7 trustee had standing to pursue Plaintiff's claims at that time;"[52] whereas

---

[48] See, AER pg. 0004:3-4.

[49] See, 11 U.S.C. § 101(5).

[50] See, AER pg. 0004:5-7.

[51] See, the caption and first page of the Complaint in Case No. 5:10-bk-61716 and Adversary No. 11-5106 from the United States Bankruptcy Court Northern District of California the District Court took judicial notice of, which was EXHIBIT C, pg. 2 of 21, of Document 98-3 ("Adv Complaint") filed in the District Court action.

[52] See, AER pg. 004:8-10.

13

W.	The bankruptcy court granted defendants' motion to dismiss the adversary proceeding "for the reasons stated on the record"[53] which included, *inter alia*:

"...this Court does not have - - or does not intend to exercise subject matter jurisdiction over these claims."[54]

"I have jurisdiction over claims that arise in, arise under, or are related to the bankruptcy case. The claims at issue do not satisfy any of these standards."[55]

"These claims do not arise in the bankruptcy case because they are not administrative matters unique to the Bankruptcy Code that have no independent existence outside of bankruptcy. So they don't arise in the case. These claims do not arise under the Bankruptcy ode because they are not claims created by the Bankruptcy Code. Instead, they are claims originating in non-bankruptcy law, so they don't arise under."[56]

X.	The District Court stated in its Order that; Ms. Cox alleged, once her bankruptcy case closed "at that point, the Property was abandoned back to Plaintiff and the purported refinancing debt was deemed unsecured and void by operation of law;"[57] whereas,

Y.	What Ms. Cox actually stated (which was not "alleged" or a "claim" upon which relief can be granted stated in the SAC) was, the subject purported debt whether it existed or not; was listed in Ms. Cox's bankruptcy schedules as unsecured; and because it was unsecured, the Property was abandoned back to Ms. Cox upon closing the bankruptcy case. Any purported debt incurred that was related to the Property, was deemed unsecured pursuant to the TILA Rescission in 2007, not deemed unsecured "at that point" upon the closing of the bankruptcy case as the District Court ruled in its Order;[58]

Z.	The District Court stated in its Order that "Defendants' wrongful activities did not end there," unintelligibly referring ("but") to Ms. Cox's State Superior Court case and "Reconstruct Company['s]" [sic] recorded instruments; and that "Plaintiff alleges that Defendants collectively

---

[53]	See, the Order Granting Defendants' Motion to Dismiss Adversary Proceeding Case: 11-05106 Do#33 Filed: 06/17/11.

[54]	See, pg. 5:24-6:1 of the Adversary Proceeding Transcript ("Transcript").

[55]	See, the Transcript pg. 6:4-7.

[56]	See, the Transcript pg. 6:8-15.

[57]	See, AER pg. 0004:11-13.

[58]	See, *passim* throughout this action, pursuant to TILA and *Jesinoski*, the Rescission was effected and deemed the purported debt unsecured upon notice and confirmed by AWL's acquiescence and failure to comply with its statutory duties within the 20-day deadline in 2007.

14

recorded or 'caused to be recorded'" the instruments stated in this section of the Order; further alleging that Ms. Cox's allegations regarding those recorded instruments "fail to specify who did any of the challenged acts;[59] whereas,

   AA.   Ms. Cox was very specific as to the true facts, who recorded what, when, where and how, in the SAC, and never stated that, nor could have "Defendants collectively recorded or 'caused to be recorded' those instruments;[60]

   AB.   The District Court's Order stated that "Plaintiff alleges that the documents wrongfully identified Shellpoint and MERS as the beneficiary, MERS as the nominee, ORNTIC as the trustee, and BONYMCorp as the assignee of the DOT;"[61] whereas,

   AC.   Ms. Cox did not state that any documents "identified" anyone.  To the contrary, the SAC ¶¶ 32 and 84 cited in the Order, did not mention the term "identified" and specifically stated that the documents listed were *ultra vires*, invalid, void and wrongfully recorded false instruments and the reasons they were, which included how some of the named entities in fact, did not exist. Therefore, the documents could not have "identified" anyone;[62]

   AD.   The District Court's Order stated that "Plaintiff alleges that each of these documents was invalid and void because Plaintiff had rescinded the DOT on which they were based;"[63] whereas

   AE.   Ms. Cox did not (only) state the wrongfully recorded false instruments were "invalid and void" due to the Rescission but for the other reasons stated throughout the SAC including those stated in ¶¶ 33-37 cited by the Court which included, *inter alia*: the instruments' recitals were inapplicable, untrue, the DOT relied on for such authority was void by operation of law pursuant to the Rescission, failure to comply with conditions precedent, violations of numerous statutory authorities, and included named entities that did not exist;[64]

   AF.   The District Court's Order stated that Ms. Cox asserted her claims upon which relief can be granted (or Counts 1-6) were "based on the above allegations;"[65] whereas,

---

[59]   See, AER pgs. 0004:20-0005:1; also see, the unintelligible and misleading fn. 5 therein.

[60]   See, AER pgs. 0442:21-0446:15.

[61]   See. AER pg. 0005:1-3.

[62]   See, AER pgs. 0443:8-0444:12 and 0460:15-19.

[63]   See. AER pg. 0005:3-5.

[64]   See, AER pgs. 0443:8-0445:21.

[65]   See, AER pg. 0005:6.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 15 of 31

AG.  As shown herein above, in the SAC and Briefs filed in the Appeal, the "above allegations" stated in the District Court's Order misrepresented the facts, were misleading, inaccurate, incomplete and at times unintelligible;

AH.  The District Court cited what the purported "Legal Standard" for ruling on a 12(b)(6) motion to dismiss was;[66] whereas,

AI.  The Court failed to state anywhere in the Order how any citation provided in the Legal Standard section of the Order applied to the facts of the case;

AJ.  The District Court stated in its Order that among others, "BONY...argue[s] that Plaintiff lacks standing to bring this case;"[67] whereas,

AK.  BONY was not a named defendant, nor sued by Ms. Cox;[68]

AL.  The District Court stated in its Order that "lack of standing...extends to each of Plaintiff's claims;[69] and "the Court determined that Plaintiff lacked standing to bring claims related to her alleged rescission because any such claims accrued pre-petition and therefore now belong to the Chapter 7 trustee" (citing the "First Dismiss Order at 11-12);[70] whereas,

AM.  There were no claims upon which relief can be granted (or "causes of action"), stated in the SAC that "related to" the Rescission but to the Defendants and Non-Defendants' unlawful actions;[71]

AN.  The District Court stated in its Order that "Plaintiff asserted that she could plead around this deficiency;"[72] whereas,

AO.  Ms. Cox never stated nor admitted that there was any "deficiency" regarding standing in the claims upon which relief can be granted, stated in the First Amended Complaint;

AP.  The District Court's Order stated that as it "explained in the first Dismissal Order, 'when [an individual] declare[s] bankruptcy, all the 'legal or equitable intertest,' he had in his

---

[66]  See, AER pgs. 0005:14-0006:11.

[67]  See, AER pg. 0006:13.

[68]  See, *passim*, throughout this litigation.

[69]  See, AER pg. 0006:13-16.

[70]  See, AER pg. 0006:17-20.

[71]  See, *Id*.

[72]  See, AER pg. 0006:19-21.

property became the property of the bankruptcy estate and are represented by the bankruptcy trustee" citing *Turner v. Cook* (9th Cir. 2004) 362 F.3d 1219, 1225-1226;[73] whereas,

AQ.  *Turner v. Cook* is distinguishable because unlike here, the appeal therein dealt with "causes of action" related to a previously filed lawsuit in District Court, where alleged causes of action that arose from business interference torts resulted in a judgment obtained in a jury trial that were not listed as "legal or equitable interest" property in that bankruptcy.  Whereas, in this instant action, there was no previous lawsuit filed, no causes of action alleged or related thereto, nor claims upon which relief can be granted, stated in the SAC that had anything to do with Ms. Cox's TILA Rescission but were again, only related to the Defendants and Non-Defendants unlawful acts that commenced in 2014 long after Ms. Cox's bankruptcy case closed. *Turner v. Cook* is inapposite;

AR.  The District Court also serially cited *In re Polis* (7th Cir. 2000) 217 F.3d 899, 901 in support of its legal conclusion;[74] whereas,

AS.  *In re Polis* was also inapposite and distinguishable because it related a pre-*Jesinoski* "TILA claim" in an appeal for a class-action case in the 7th Circuit;[75] in which subsequent to filing bankruptcy, that appellant learned she "might have a cause of action against appellee travel service for concealment of a finance charge" on an exempted cause of action for a TILA claim for damages.  This has nothing to do with the facts of this instant action and lawful remedy of rescission for failure to provide required disclosures under TILA which was never alleged as a "cause of action" nor was it a "claim" that was required to be listed as property in Ms. Cox's bankruptcy.  Neither did *In re Polis* in fact, find that a TILA rescission remedy such as Ms. Cox's is "estate property [which] includes TILA claim" as stated by the District Court;

AT.  The Dist. Court stated the legal conclusion in its Order, based on the above inapposite citations, that "[t]hus any pre-petition claims that Plaintiff had regarding the Property were property of the estate;"[76] whereas,

---

[73]  See, AER pg. 0007:6-9.

[74]  See, AER pg. 0007:6-11.

[75]  See, AER pg. 0007:11-12.

[76]  See, AER pg. 0007:12-13.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 17 of 31

AU.  As stated throughout this litigation, there were no "pre-petition claims" upon which relief can be granted, stated in the SAC; nor were there any "pre-petition claims that Plaintiff had regarding the Property" as unintelligibly stated in the Order;[77]

AV.  The Dist. Court's Order stated that "claims remain property of the estate unless the bankruptcy court orders otherwise or the claims are abandoned or administered.  In order to have been abandoned or administered, Plaintiff's claims must have been properly scheduled;"[78] whereas,

AW.  The Order failed to define and thereby misrepresented what "claims" were; or what "claims" were being referred to; and further failed to explain, that as a matter of law, property actually scheduled like Ms. Cox's real Property the subject of this action, *Id*., was in fact, abandoned back to her after the bankruptcy case closed citing yet another inapposite,  pre-*Jesinoski* case "*Vreugdenhill v. Navistar Int'l Transp. Corp*. (8th Cir. 1991) 950 F.2d 524, 526,"[79] purportedly in support which related to a situation in which an unconcealed "claim" that was not "formerly scheduled" related to a "cause of action" that the trustee learned about by other means than being scheduled in bankruptcy for failure to accept returned parts.  The cause of action or claim upon which relief can be granted again, arose out of appellant's pre-petition lawsuit for damages for failure to accept returned parts.  *Vreugdenhill* is in no way relevant whatsoever to the facts of this instant case either;

AX.  The District Court's Order stated that "Plaintiff does not contest the fact that each of the claims in the SAC arises from the purported rescission;"[80] whereas,

AY.  The actual fact is, each and every claim upon which relief can be granted, stated by Ms. Cox in the SAC, arose from Defendants' actions that commenced in 2014, not from the Rescission;[81]

---

[77]  "[T]he Property" is undefined in the Court's Order but the physical "Property" the subject of this action was in fact "properly scheduled" in Ms. Cox's bankruptcy as shown herein as the unsecured "property" it was.

[78]  See, AER pg. 0007:13-17.

[79]  See, AER pg. 0007:15-17.

[80]  See, AER pg. 0007:18-19.

[81]  See *e.g*., AER pgs. 0444-0445 ¶¶ 33-37, 0458 ¶¶ 73 and 75, 0459-461 ¶¶ 78, 79, 81, 83 and 85; AOB pgs, 14, 19, 30, 31, 58 and 59-60 and fns. 6, 15, 16 and further references therein; and ARB pgs. 5, 9-10 and 17-18, and fns. 26, 27 therein.

Case: 10-61716    Doc# 39    Filed: 03/04/19    Entered: 03/04/19 12:27:38    Page 18 of 31

AZ.   The District Court's Order stated that Ms. Cox failed to "mention [] the discharge" in the SAC;[82] whereas,

BA.   The fact is, Ms. Cox did address the discharge in the SAC;[83]

BB.   The District Court's Order stated that "any allegations of wrongdoing based on the discharge would have failed to state a claim because 'discharge in a Chapter 7 liquidation only extinguishes the 'personal liability of the debtor' and the creditor's right to foreclose on the mortgage survives or passes through the bankruptcy;"[84] whereas,

BC.   There was no surviving "mortgage" that "passe[d] through the bankruptcy" or "creditor" with a right to foreclose on Ms. Cox's Property because the security for the subject purported debt scheduled in the bankruptcy was rescinded as a matter of law in 2007 and there is no "creditor" as named in the rescinded security instrument;[85]

BD.   The District Court's Order stated that "Defendants correctly assert—as the Court previously determined—that Plaintiff had to schedule any claims 'related to' her alleged rescission, not the rescission itself, in order to retain standing to assert them;"[86] whereas,

BE.   There were no claims upon which relief can be granted stated in the SAC that "related to" Ms. Cox's Rescission but each related to the unlawful acts of Defendants which commenced in 2014,

---

[82]   See, AER pg. 0007, fn. 7.

[83]   See, AER pgs. 0431 ¶ 4, 0433 ¶ 10, 0436 ¶¶ 18 and 19, 0438 ¶ 22, 0440 ¶ 25, 0442 ¶ 29, 0452-0453 ¶ 54, 0453-0454 ¶ 57(d), 0455-0456 ¶ 62 and ¶ 65, 0462 ¶ 88(a)(3), 0463-0464 ¶¶ 88(d) & (e), 0466 ¶ 95, 0467 ¶¶ 95(b)(1) & (2), 0468 ¶ 99, 0473 ¶¶ 105 & 106, 0483-0484 ¶ 127, 0487 ¶ 136, 0489 ¶ 142, 0490-0491 ¶¶ 144(e) and 145, 0492 ¶¶ 148 & 149, 0494-0495 ¶ 154(c), 0496 ¶ (b), 0498 ¶¶ (b), (c) & (e), 0499-04500 ¶ 161, 0506 ¶ 178, 0508 ¶ 184 and 0506 ¶ 205.

[84]   See, AER pg. 0007:25-28 fn. 7.

[85]   See, *e.g*. AER pgs. 0431 ¶ 4, 0433 ¶ 10, 0436 ¶¶ 18 and 19, 0440 ¶ 25, 0453-0454 ¶ 57(d), 0455-0456 ¶ 62, 0465-0466 ¶ 88(e), 0467-0468 ¶ 95(b)(1), 0473 ¶ 105, 0483-0484 ¶ 127, 0487 ¶ 136, 0490-0491 ¶¶ 144 and 145, 0492 ¶¶ 148 and 149 and *passim*; AOB pgs. 14 ¶ 2, 29, 52, 53, and fn. 24 therein; and ARB pg. § IV.A.1.

[86]   See, AER pg. 0008:1-4.  It should also be noted that *Cusano v. Klein* (9ᵗʰ Cir. 2001) 264 F.3d 936, 948-49 cited by the Court in support of its erroneous legal conclusion is another inapposite citation related to an open book account claim in a Chapter 11 bankruptcy for sums owed on the account and unpaid royalties due at the time the petition was filed along with all related royalty-related claims which were determined by the court to have accrued and arose pre-petition.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 19 of 31

BF.   The District Court's Order stated that in applying the holding in Jesinoski, "the Court agrees with Defendants: Jesinoski makes clear that Plaintiff could have asserted the claims at issue as early as 2007 and retained the ability to do so in 2010, when she filed for bankruptcy" and "the Court finds that Plaintiff must have scheduled the claims at issue in order to now have standing to bring this case;"[87] whereas,

BG.   The claims upon which relief can be granted, stated in the SAC did not arise nor were they stated against Defendants except for those commencing in 2014.  Those claims upon which relief can be granted therefore, could not possibly have been "asserted...as early as 2007;"

BH.   The District Court's Order stated that Ms. Cox argued that she "could not have raised her claims in the bankruptcy because she knew that, given the state of Ninth Circuit law at that time, claims brought in 2010 concerning a loan that was consummated in 2004 would have been considered time-barred" and that "this argument ignores a debtor's obligation to disclose all assets to the bankruptcy court;"[88] whereas,

BI.   Paragraph AER 0009:2-13 of the Order is unintelligible, misrepresents Ms. Cox's argument and obfuscates the facts.  Ms. Cox has alleged throughout this litigation that: (1) her claims upon which relief can be granted did not commence until 2014; and therefore (2) did not exist pre-petition, *Id*.

The notion that somehow Ms. Cox should have been able to predict "every conceivable interest of the debtor..." is completely absurd and once again inapposite to the facts of this instant case.  *In re Yonikus* (7th Cir. 1993) F.2d 866, 869 cited by the District Court related to pre-petition workers' compensation benefits and exemption, and debtor's interests, legal and equitable that existed when a petition is filed.  Furthermore, the quote by the District Court from *In re Yonikus* was actually serially citing *In re Anderson* (Dist. of R.I. 1991) 128 Bankr. 850, 853 which was also inapposite, not only being just a District Court case in Rhode Island but itself quoting from "Notes of Committee on the Judiciary," S. Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), far from being case law in this District and again, completely unrelated to the facts in this instant case;

BJ.   The District Court's Order stated that "[s]imply listing the underlying asset [or liability] out of which the cause of action arises is not sufficient...[t]hus, regardless of whether or

---

[87]   See, AER pgs. 0008:23-009:1.

[88]   See, AER pg. 0009:2-4.

not Plaintiff scheduled her debt properly, she failed to schedule any related claims or assets;"[89] whereas,

BK.  As stated throughout this litigation, Ms. Cox alleged no "cause of action" or "claims" stated upon which relief can be granted, arising from or "related to" the Property scheduled in her bankruptcy or TILA Rescission.  Each claim upon which relief can be granted that was stated in the SAC, "related to" the actions of Defendants commencing in 2014, *Id*., no matter how many times the District Court repeated its inaccurate representation of the facts and inapposite authorities;

BL.  The District Court's Order stated once again, that Ms. Cox's "claims...now belong to the bankruptcy estate and Plaintiff lacks standing to pursue them;"[90] whereas,

BM.  Once again, there are no "claims," "assets," "cause(s) of action;" or "property;" that "belong(s) to the bankruptcy estate;" and contrary to the District Court's Order, Ms. Cox did not "thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it."[91]  Each claim upon which relief can be granted stated in the SAC was a post-petition "claim" upon which relief can be granted, that occurred commencing in 2014 for relief from Defendants' unlawful acts;

BO.  The District Court's Order stated that Ms. Cox "amended the relevant allegations only to offer legal argument;"[92] whereas,

BP.  The SAC replaced the FAC and was the ONLY operative complaint;[93]

BQ.  The District Court's Order stated that Ms. Cox "moved for default against BONYMCorp and ORNTIC, then the Court considered "whether to enter a default judgment;"[94] whereas,

BR.  Ms. Cox did not move for a default judgment but for entry of default after the Court Clerk failed to comply with its mandatory duties to enter the default of these non-appearing parties;[95]

---

[89] See, AER pg. 0009:20-21,

[90] See, AER pg. 0009:23-24.

[91] See, AER pg. 0010:1-2.

[92] See, AER pg. 0010:3-5.

[93] See, AOB pgs. 20-21 ¶ 20, referenced footnotes and citations therein.

[94] See, AER pg. 0010:7-10

[95] See, Documents 137 and 138 filed May 13, 2016 in the Dist. Court case.

21

1  BS.  The District Court's Order stated that it lacked "subject matter jurisdiction over the
2  case;"[96] whereas,

3  BT.  In spite of its own ruling to the contrary, the District Court contradicted itself by
4  exercising subject matter jurisdiction on other aspects "over the case;"

5  BU.  The District Court's Order stated that "Plaintiff's motions additionally seek Rule 11
6  sanctions against the attorneys representing ORNTIC and BONY on the grounds that their
7  submissions have been fraudulent and/or frivolous because they misrepresented the existence of
8  BONY and ORDMS and because the attorneys have no legal services agreement with
9  BONYMCorp or ORNTIC;"[97] whereas,

10  BV.  Ms. Cox's Motions for Sanctions were actually stated, pursuant to Fed. R. Civ. P., R.
11  11 *et seq*. on the grounds that:

12  (1)  The Law Offices of Les Zieve, John C. Steele and Mike Aleali (collectively
13  "LOLZ"):

14  (a)  signed a waiver of service of summons for ORNTIC yet failed to appear for
15  ORNTIC before the July 20, 2015 deadline; whereas

16  (b)  At that time, LOLZ claimed only to represent and purported to appear for
17  ORDMS who was not a party or defendant named in this action; and therefore, failed
18  to comply with Fed. R. Civ. P., R. 11(b) *et seq*. for presenting to the court, papers in
19  the District Court action ***before*** making "inquiry reasonable under the circumstances"
20  as thereunder required;[98] and

21  (c)  because, pursuant to the requirements under Rule 11(b):

22  (1)  the claims, defenses and other legal contentions stated in the papers
23  filed, were not warranted by existing law;

24  (2)  the papers filed by LOLZ failed to identify that the factual
25  contentions would "likely have evidentiary support after a reasonable
26  opportunity for further investigation or discovery;

27

28  ───────────────
[96]  See, AER pg. 0010:10-16.

[97]  See, AER pg. 0010:17-20.

[98]  ...[T]he rule clearly authorizes, indeed requires, a judge to sanction a represented party for
violations." (*Business Guides v. Chromatic Communications Enters*. (9th Cir. 1989) 892 F.2d
802, 809.  That such "...belief [is to be] formed after ***reasonable inquiry*** is well grounded in
fact..." "The new language stresses the need for some prefiling inquiry into both the facts and
the law to satisfy the affirmative duty imposed by the rule" (*Id*. at 809, emphasis in original).

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 22 of
31

1            (3)    there were no denials by LOLZ, of the factual contentions leveled by

2      Ms. Cox on the evidence she provided; and

3            (4)    there were no denials by LOLZ specifically identified being

4      reasonably based on belief or lack of information; and

5            (5)    the papers filed by LOLZ failed to identify that the factual

6      contentions would "likely have evidentiary support after a reasonable

7      opportunity for further investigation or discovery; [99]

8      (2)    The Law Offices of Yu|Mohandesi LLP; and attorney Thuy N. Tran (collectively

9 "YMLLP") claimed throughout this litigation:

10      (a)    to represent BONY, who was a non-party:

11            (1)    not a named defendant;

12            (2)    not sued by Ms. Cox; and

13            (3)    does not exist as shown by Ms. Cox;

14      (b)    YMLLP filed numerous papers in the District Court action _**before**_ making

15 "inquiry reasonable under the circumstances" as required; and

16      (c)    because, pursuant to the requirements under Rule 11(b), the claims,

17 defenses and other legal contentions stated in the papers filed, were:

18            (1)    not warranted by existing law;

19            (2)    had no evidentiary support;

20            (3)    there were no denials by YMLLP, of the factual contentions leveled

21      by Ms. Cox; and

22            (4)    there were no denials by YMLLP specifically identified being

23      reasonably based on belief or lack of information; and

24            (5)    the papers filed by YMLLP failed to identify that the factual

25      contentions would "likely have evidentiary support after a reasonable

26      opportunity for further investigation or discovery;[100]

27 BW. The District Court's Order stated that "BONY's counsel maintains that BONY is the

28 proper defendant in this case and argues that Plaintiff has failed to prove otherwise;"[101] whereas,

---

[99] See, OSC-1, *Id*.

[100] See, OSC-2, *Id*.

[101] See, AER pg. 0010:20-21.

Case: 10-61716    Doc# 39    Filed: 03/04/19    Entered: 03/04/19 12:27:38    Page 23 of 31

BX. (1)   Ms. Cox did in fact provide evidence that BONY did not exist;[102] and   (2) there was otherwise no authority provided in support of counsel or the District Courts' legal conclusion that there was any requirement for Ms. Cox to "prove" BONY did not exist;[103]

BY.   The District Court's Order stated that "[i]n support, BONY notes[104] that the Clerk of the Court has declined to grant default against BONY on two occasions;[105] whereas,

BZ.   BONY as shown by evidence provided by Ms. Cox, undeniably does not exist,[106] therefore BONY could not have "note[d]" anything;  The Clerk of the Court had no authority to "grant" anything but was required to enter the default(s) Ms. Cox applied for as mandated by Fed. R. Civ. P., R. 55(a); there was no default requested to be entered for BONY on any "occasion[];"[107] and as shown, *inter alia*, herein, the Clerk of the Court failed to comply with its Rule 55(a) duty to enter BONYCorp's default, the actual, existing party sued by Ms. Cox who failed to appear in the Dist. Court action or the appeal);

CA.   The District Court's Order stated that "the Court agrees with BONY's counsel that Plaintiff has failed to establish that BONY is the improper party;[108] whereas,

CB.   The District Court "agree[ing] with BONY's counsel that Plaintiff has failed to establish that BONY is the improper party" simply by such agreement with counsel, and merely by "[h]aving reviewed the record" was erroneous because, *inter alia*:

(1)   BONY was not sued by Ms. Cox;

(2)   BONY cannot be a "party" when it does not exist;[109]

(3)   it was BONYMCorp that was sued by Ms. Cox, the only entity with a derivative of that name shown by Ms. Cox to exist;[110]

---

[102] See, AER pgs. 0450-0453 ¶¶ 48-55; and

[103] See, AER, *Id*.

[104] BONY was shown by Ms. Cox, does not exist, therefore BONY could not have "shown" anything.

[105] See, AER pg. 0010:22-23.

[106] See, *Id*.

[107] ECF 64 and 123 sought the entry of default against BONYMCorp, not BONY.

[108] See AER pg. 0010:23-25.

[109] See *e.g.* the SAC, *passim*; AOB pgs. 23-24 ¶ 24(b), 62, 65-66 and 67 and fns. 9, 10, 29 and 31 therein; ARB pgs. 20-21 and 29 and fn. 50.  Also see, Fed. R. Civ. P., R. 17 *et seq*.

[110] See, the SAC, *passim* and OSC-2.

24

1    (4) YMLLP never denied that BONY *does not* exist and failed to show that BONY

2    *does* exist; and

3    (5) YMLLP failed to deny that it does not have a legal services agreement with BONY

4    (or BONYMCorp);[111]

5    CC.    The District Court's Order stated that "Plaintiff has failed to establish that BONY is

6    the improper party;"[112] whereas,

7    CD.    The Court referencing "BONY's RJN Exh. C (SOT listing BONY as the assignee of

8    Plaintiff's DOT);"[113] "establish[ed]" nothing because contrary to the Court's Order, it was in fact

9    shown by Ms. Cox with supporting evidence and not denied by YMLLP either, BONY does not

10   exist as named in the "SOT;"

11   CE.    The District Court's Order stated that "after receiving Plaintiff's Safe Harbor Notice

12   for her Rule 11 motion, counsel contacted ORDMS who then researched the issue and concluded

13   that ORNTIC is in fact the proper party defendant in this case;"[114] whereas,

14   CF.    It was impossible for LOLZ to "contact[] ORDMS" because ORDMS as shown by

15   Ms. Cox, does not exist as any form of a legally recognized entity; having admitted and

16   confirmed in the District Court's Order that it was not until *after* Plaintiff's Safe Harbor Notice

17   that counsel "contacted ORDMS" is LOLZ's admission of their violation of Rule 11; by

18   admitting that ORNTIC was actually the "proper" party sued by Ms. Cox ("proper party" is a

19   misleading term and misnomer) and the "defendant in this case;" LOLZ further admits their

20   violation of Rule 11;   the "Notice of Errata to advise the Court of the error" was untimely and

21   violated Rule 11 because the Court was "advise[d] of the error" by Ms. Cox since the beginning

22   of this case; the "Notice of Errata" did not "correct" anything;[115] and the "Notice of Errata" could

23   not and did not "remed[y] any offensive pleading" because neither ORDMS, nor ORNTIC filed a

24   "pleading" in this case.[116]

---

[111] See *e.g.*, OSC-2.

[112] See, AER pg. 0010:24.

[113] See, AER pg. 0010:24-25.

[114] See, AER pg. 0011:2-4.

[115] LOLZ's violation of Rule 11(b) could not be "remedied" after the fact because LOLZ were required thereby, to have conducted "an inquiry reasonable under the circumstances" ***before*** "signing, filing, submitting, or later advocating" all the previously filed "written motion[s] or other paper[s]."  (Also see, OSC-1.)

[116] The "Notice of Errata" was not a pleading pursuant to Fed. R. Civ. P., R. 7(a).

25

## VI. RJN of Adjudicative Facts Related to the App. Court's Memorandum Decision

### A. The Memorandum's First paragraph (pg. 2)

1. The opening paragraph's presumptions were incorrect:

    (a) FACT: Ms. Cox did not "default[] on a loan;"[117]

    (b) FACT: There was no "loan" "secured by a deed on her home in Santa Cruz." Notwithstanding the transaction being invalid *ab initio*,[118] any security purported to have been evidenced by a deed of trust was rescinded as a matter of law in July 2007 pursuant to TILA[119] once Ms. Cox's right to assert it accrued pursuant to *Jesinoski* in 2015.[120] Furthermore, the "loan" was scheduled and unchallenged as unsecured in her 2010 bankruptcy[121] and then discharged in 2012 along with all other unsecured debt.[122]

    (c) FACT: "Defendants" were not "creditors" and "lenders." Therefore, the statement that "defendant creditors and lenders later recorded default notices against Cox's home and a notice of trustee sale" was untrue and misrepresented the facts.

### B. The Memorandum's Second Paragraph (pg. 2)

1. There were no "unscheduled property-related claims" despite the district court's [erroneous] conclusion(s), and one reason Ms. Cox sought review in the App. Court.[123]

2. The fact is, *inter alia*, the claims upon which relief can be granted stated in the operative complaint or "causes of action," were related to Defendants' and Non-Defendants' unlawful actions that commenced in 2014.

---

[117] See e.g., pg. 21 RB A.2 and fn. 52, 28-29 and fn. 74 and references in footnotes; and the Request for Judicial Notice filed as DktEntry: 103 in Case # 16-16566 in the 9th Cir. App. Court ("RJN") ¶ 84.

[118] See *e.g.*, pgs. 33:11-20, 81, 97, 149, 173 and *passim* in DktEntry: 18 (18-1 through 18-7 "ER"), Cal. Civ. Code § 1558; the Briefs, Motions, Replies and stated facts *passim* throughout this case and RJN ¶ 85.

[119] See, RJN ¶ 86.

[120] See, RJN ¶ 87.

[121] See, RJN ¶ 88.

[122] See, RJN ¶ 89.

[123] The term "claims" was not defined but is assumed to mean "claim(s) upon which relief can be granted."

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 26 of 31

3.      What "unscheduled property-related claims" meant in the Memorandum was not defined and was unintelligible.  If the Memorandum was referring to Ms. Cox's TILA Rescission, it was neither a "claim" nor "property-related."  As stated throughout this case, Ms. Cox's Rescission was a non-judicial ***remedy***, not a *claim* upon which relief can be granted or "cause of action"[124] effected as a matter of law in 2007 once Ms. Cox's right to assert it accrued pursuant to *Jesinoski* in 2015. Moreover, in bankruptcy, a "cause of action" is considered personal property, not real property and therefore, NOT "property-related."

4.      Until *Jesinoski* in 2015, this 9th District held that a lawsuit was required to assert a TILA rescission.  Because the subject transaction statutorily consummated in December 2004, Ms. Cox had a 3-year statute of repose within which to file a lawsuit in this Circuit; and a 1-year statute of limitations in which to file suit to either enforce the creditor's mandatory duties under 15 U.S.C. § 1635(b) or damages for failure to comply which those duties within the 20-day deadline.  Both statutes foreclosed Ms. Cox's rights to allege ANY cause of action under the 9th Circuit holding at the time; (a) to assert the Rescission (terminated in December 2007); and (b) for enforcement or damages (terminated in July 2008); whereas, she filed her bankruptcy petition in 2010.[125]  This means any "cause of action" related to the Rescission at the time of the commencement of the bankruptcy, did not exist and accordingly, could not have been scheduled.[126]

5.      This paragraph of the Memorandum provided no evidence the district court applied any (appropriate or applicable) standard(s) of review.

**C.      The Memorandum's Third and Fourth Paragraphs (pgs. 2-3)**

1.      The Memorandum's third paragraph merely repeated the district court's erroneous ruling virtually verbatim (see, ER pg. 7), while in addition to the fourth paragraph, provided inapposite and misrepresented citations[127] related to undefined "'legal

---

[124] See, RJN ¶¶ 79-88 and 103-106.

[125] See *e.g.*, 15 U.S.C. §§ 1635(b) and 1640 *et seq*.; ER pgs. 279:14-20; 437:8-21; 441:1-9; 455:15-23; 456:27-457:6; 524-526; OB, RB and *passim* throughout this action.

[126] Standing is a jurisdictional requirement properly addressed under Fed. R. Civ. P. 12(b)(1); and post-petition claims are not required to be scheduled.  See *e.g.*, *Malfatti v. Mortg. Elec. Registrations Sys.* (N.D. Cal. June 20, 2013) No. C 11-03142 LB, 2013 U.S. Dist. LEXIS 87060 (internal citations omitted).

[127] 11 U.S.C. 541(a)(1) does not stand on its own and appears to be intentionally misrepresented authority as cited in the Memorandum.  This is also true for *Turner v. Cook* (9th Cir. 2004) 362 F.3d 1219, 1225-26, by having excluded the "***as of the commencement of the case***" qualifier.

27

or equitable interest'" in further undefined property that purportedly and incorrectly "bec[ame]" part of the 2010 bankruptcy estate, supposedly required to be "represented by the bankruptcy trustee."

    2.    11 U.S.C. § 541(a)(1) was incomplete as cited in the Memorandum and excludes important applicable portions.  To wit:

> " (1)  Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property ***as of the commencement of the case***." 11 U.S.C. § 541 (emphasis added)

    3.    The "causes of action" or "claims upon which relief can be granted" alleged against Defendants in this action, ***did not exist in 2010 when the bankruptcy case commenced*** [128] and were alleged in the operative complaint based on the legal and equitable interest Ms. Cox had in her property subsequent to court order in January 2012 that discharged Ms. Cox's debts which included any "debt" related to the Property because any such debt was scheduled and discharged as the unsecured when the discharge judicially granted in January 2012.  Again, the unsecured status of the Property was never disputed or pursued by the trustee[129] nor challenged by any purported creditor whatsoever; and any security, power of sale or "lien" that may have existed against the Property was rescinded as a matter of law in 2007 as shown throughout this case.

---

[128] In should be noted that Defendant New Penn Financial dba Shellpoint Mortgage Servicing did not even exist at the commencement of Ms. Cox's bankruptcy.  It is undeniably true that Ms. Cox's real Property was scheduled at the commencement of the bankruptcy as unsecured. ***No creditor disputed the unsecured status of the purported debt in any manner, shape or form***. Moreover, Ms. Cox's TILA Rescission as shown throughout this case with applicable supporting authority, was not a "claim" or "cause of action" but a non-judicial ***REMEDY*** for the "creditor's" undenied failure to comply with the disclosure requirements of TILA which was the real "cause of action" for invoking the TILA remedy and there was no attempt, nor could there be, to state a claim upon which relief can be granted or "cause of action" to force the "creditor" to provide the disclosures which would have been the actual, only "cause of action" related to the TILA Rescission remedy for which there is no applicable authority to enforce.  Any related "cause of action" that might have existed for the "creditor's" failure to comply with the 20-day mandatory Rescission requirements, terminated in July 2008 under the applicable 1-year statute of limitations, approximately 2 years before Ms. Cox's petition was filed. **THIS IS A FACT**.  Laches and estoppel by silence are applicable; any ability to challenge the rescission has long since terminated.

[129] See, pg. 3 of DktEntry: 94; also see Exhibits "A"–"D" attached to the RJN; incorporated by reference as though fully set forth herein.

Case: 10-61716   Doc# 39   Filed: 03/04/19   Entered: 03/04/19 12:27:38   Page 28 of 31

4. The citations provided in these two paragraphs of the Memorandum were inapposite, distinguishable and unrelated to the facts of this case. Each citation suffered from the same malady related to "causes of action" that in this instant case, did not exist ***at the commencement*** of the bankruptcy and therefore could not have been scheduled.

**D. The Memorandum's Fifth Paragraph (pg. 3)**

1. This paragraph of the Memorandum was also erroneous. As shown throughout the appeal, were it not for the failure to apply appropriate standards of review or the Decision being made on unsupported, misplaced and incorrect presumptions, it should have otherwise been determined by the Court that Ms. Cox did not "lack[] standing to sue."[130] Furthermore, ***if*** the Dist. Court lacked subject matter jurisdiction over "**the lawsuit**," then it should not have made ***any*** determinations ***at all*** other than to dismiss the case. The district court selectively and erroneously applied jurisdiction without analysis and the Memorandum simply agreed with the Dist. Court, without the application of the requisite, appropriate standard(s) of review.

2. *Cetacean Cmty. v. Bush* (9th Cir. 2004) 386 F.3d 1169, 1174 cited in the Memorandum in support of the Opinion's conclusion(s) was inapposite and distinguishable because, *inter alia*, the case was one in which the "standing" issue was undisputed, unlike this instant action. Furthermore, *Cetacean*, an Endangered Species Act action, contained no facts relevant to this action whatsoever.

3. Contrary to the Memorandum, there was no filed "motion for default" but for "entry of default(s)" which is a whole different, two-step civil procedure. If the court clerk had ENTERED the default as mandated by the Rules (see, Fed. R. Civ. P., R. 55(a)), then the second step of the process would have been a motion for entry of a default judgment (Fed. R. Civ. P., R. 55(b)(2)) which would have been noticed and a hearing held to litigate and judicially determine the veracity of Ms. Cox's allegations and Defendants' and Non-Defendants' failure(s) to deny them. However, no hearing was held, which is but one of Ms. Cox's ignored due-process rights in violation of mandatory Fed. R. Civ. P. by the Dist. Court which failed to enforce them when requested. These facts were obfuscated in the App. Court's Memorandum.

---

[130] See, RJN ¶¶ 96-101.

Case: 10-61716    Doc# 39    Filed: 03/04/19    Entered: 03/04/19 12:27:38    Page 29 of 31

**E.    The Memorandum's Sixth Paragraph (pgs. 3-4)**

1.    This paragraph misrepresented the facts and failed to address applicable authorities.  Ms. Cox did not seek sanctions: "because two corporate defendants' names were spelled differently on certain filings." This statement is dismissive of the undenied facts detailed by Ms. Cox's filed papers, that two defendants specifically named and identified with supporting exhibits provided in the record; failed to appear.  In one instance, failed to appear untimely if at all; in the other, the named defendant failed to appear whatsoever.  Moreover, attorneys against which sanctions were sought, failed to deny not having legal services agreement(s) with either of the parties sued, or the different parties they claimed to appear for; nor did they deny the lack of existence of these entities.  These facts were undisputed and thereby tacitly acknowledged yet ignored in the Memorandum.

2.    The Memorandum exhibited a lack of concern for attorneys bringing fraud on the court while providing free reign for them to name anyone, anything they want, whether they existed or not; or whether they had legal services agreements with whom they claimed to represent.  This issue is not merely about the misspelling of names of defendants but attorneys' willful and intentional lack of candor with and bringing fraud on the court and unlawfully appearing for existing and non-existing entities without the required written agreements.  *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 393, cited but not discussed in the Memorandum, was superseded by statute and failed to support the erroneous conclusion(s) on this issue and had no relevance to the facts of this instant case.  By contrast, facts were stated, and applicable supporting authority WAS provided, in the two R. 11 motions.

3.    The Dist. court clerk's refusal to comply with the mandatory duties under Fed. R. Civ. P., R. 55(a) and the Court's failure to enforce the clerk's compliance, denied Ms. Cox her right to be heard on these documented defaults.

**F.    The Memorandum's Seventh Paragraph (pg. 4)**

As stated above, Ms. Cox not only sought review of the previous two motions for sanctions but filed two ***new motions*** in this venue against attorneys for ***continued and new violations*** of R. 11 bringing fraud on ***this*** appellate court as well.

30

**G.    The Memorandum's Eighth Paragraph (pg. 4)**

(1)    The Memorandum denied RJN 1 and RJN 2.  However, taking judicial notice was mandatory under the Fed. R. of Evid., R. 201(c)(2); and in denying to do so, the Decision failed to apply the submitted adjudicative facts which showed, that the presumptions and conclusions in the Memorandum were inconsistent with the facts.

(2)    Taking judicial notice as mandated, should have changed the misplaced conclusions and presumptions in the Memorandum.

**VII.  Summary**

Therefore, pursuant to Fed. R. of Evid., Rules 102, 201(c)(2) & (d), 401(a) & (B), and 402 and the other reasons, grounds and authorities cited in this RJN, Ms. Cox respectfully requests this Honorable Court take judicial notice of the adjudicative facts, the documents and authorities cited herein and apply them to the Court's reconsideration of its Order denying the reopening of Ms. Cox's bankruptcy case and amending the schedules as requested.

Dated: March 4, 2019                         s/Ronald H. Freshman
                                             Ronald H. Freshman
                                             3040 Skycrest Dr.
                                             Fallbrook, CA 92928
                                             Tel (858) 756-8288
                                             Fax (858) 964-1728
                                             ronfreshman@gmail.com
                                             Attorney for Debtor Kimberly Cox

31